IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATFISH PICTURE COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> VERSANT MEDIA, LLC and ASYLUM ENTERTAINMENT GROUP LLC d/b/a PANTHEON MEDIA GROUP, <br><br> Defendants. | Civil Action No. 1:26-cv-2470 <br><br> <u>COMPLAINT</u> <br><br> Plaintiff Demands <br> <u>A Trial by Jury</u> |

Plaintiff Catfish Picture Company, LLC ("Plaintiff"), by and through its undersigned counsel, alleges the following as and for its Complaint against Defendants Versant Media, LLC ("Versant") and Asylum Entertainment Group LLC d/b/a Pantheon Media Group ("Pantheon") (collectively, "Defendants"):

<u>JURISDICTION AND VENUE</u>

1.     This is a civil action for trademark infringement and unfair competition arising under the Lanham Act of July 5, 1946, as amended, 15 U.S.C. § 1501 *et seq.* (the "Lanham Act"). This Court has original jurisdiction by virtue of 28 U.S.C. § 1338(a) and pendent jurisdiction through 28 U.S.C.§ 1338(b), and venue is proper under 28 U.S.C. § 1391.  The pendent claims arise under New York law relating to trademarks and unfair competition, and these claims are substantial and related to the Federal trademark claims.

<u>PARTIES</u>

2.     Plaintiff Catfish Picture Company, LLC is a New York limited liability company with its principal place of business located at 56 Miller Pond Drive, Stanfordville, New York 12581.

1

3.      Upon information and belief, Defendant Versant is a Delaware limited liability company with a place of business located at 229 West 43rd Street, Suite 6-401, New York, New York 10036.  Versant is a media company that was spun-off from NBC Sports parent Comcast in January 2026 that houses several cable and digital entertainment networks that have aired and distributed programming content in this District and throughout the United States.

4.      Upon information and belief, Defendant Pantheon is a Delaware limited liability company with a place of business located at 304 Park Avenue South, New York, New York 10010. Pantheon is a content production company that produces unscripted multimedia content that has been aired and distributed in this District and throughout the United States.

FACTUAL ALLEGATIONS

A.      Plaintiff's CATFISH Trademark

5.      Plaintiff is the United States production company behind the highly successful CATFISH branded entertainment universe, which consists of entertainment services including the creation, production, distribution, promotion, marketing, advertising and provision of ongoing reality-based, investigative documentary storytelling across film, television and audio and digital platforms.  The CATFISH universe originated with the documentary film *Catfish*, and later expanded to the long-running television series *Catfish*.  Over time, the CATFISH brand has grown to include multi-platform content offerings consisting of a podcast, YouTube channel and several spinoff television series, all offered and distributed by Plaintiff and its licensees and consumed by United States consumers.

6.      In addition to its rights at common law in the CATFISH trademark, Plaintiff is the owner of incontestable federal trademark registrations on the Principal Register of the United States Patent and Trademark Office for Plaintiff's CATFISH trademark all of which are used in connection with Plaintiff's entertainment services consisting of CATFISH branded multi-platform

2

programming and related advertising and promotional services.

7.    Plaintiff owns United States Registration Number 5,450,691 for the incontestable CATFISH trademark in connection with "Entertainment services in the nature of an on-going reality based television program" in International Class 41, filed on January 18, 2013, and registered on April 24, 2018, claiming use since at least as early as November 12, 2012.  A true and correct copy of the certificate of registration for United States Registration Number 5,450,691 is attached hereto as Exhibit A.

8.    Plaintiff owns United States Registration Number 5,450,690 for the incontestable CATFISH: THE TV SHOW trademark in connection with "Entertainment services in the nature of an on-going reality based television program" in International Class 41, filed on January 18, 2013, and registered on April 24, 2018, claiming use since at least as early as November 12, 2012. A true and correct copy of the certificate of registration for United States Registration Number 5,450,690 is attached hereto as Exhibit B.  Hereinafter, Plaintiff's rights, title and interest in and to the trademarks consisting of and comprising the incontestable CATFISH trademark, including, but not limited to, all corresponding United States federal trademark registrations, common law trademarks rights and any associated goodwill is collectively referred to as the "CATFISH Trademark."

9.    Plaintiff's incontestable United States registrations for the CATFISH Trademark are valid and subsisting, in full force and effect and have become incontestable by operation of law such that the registrations constitute conclusive evidence of the validity of the registered CATFISH Trademark and of the registration of the CATFISH Trademark, of Plaintiff's ownership of the CATFISH Trademark and of Plaintiff's exclusive right to use the CATFISH Trademark in commerce on or in connection with the services specified in the affidavit filed under the provisions

3

of Section 1065 of the Lanham Act, 15 U.S.C. § 1065.  *See* Section 1115(b) of the Lanham Act, 15 U.S.C. § 1115(b).

10.     Due to the incontestable status of Plaintiff's United States registrations, the validity of Plaintiff's CATFISH Trademark cannot be challenged on the grounds that it is merely descriptive and secondary meaning is presumed.  *See* Section 1115(b) of the Lanham Act, 15 U.S.C. § 1115(b).

11.     For over a decade and since long prior to the acts and conduct of Defendants complained of herein, Plaintiff, and its agents, have continuously used and are now using Plaintiff's CATFISH Trademark in commerce throughout the United States, including its territories, in association and in connection with entertainment services related to the creation, production, distribution, promotion, marketing, advertising and provision of ongoing reality-based programming across film, television and audio and digital platforms ("Entertainment Services").

12.     During the longstanding, widespread and continuous use of Plaintiff's CATFISH Trademark, Plaintiff and its agents have expended considerable time, effort and money in advertising, marketing and promoting Plaintiff's Entertainment Services to the general public and trade throughout the United States.

13.     Due to Plaintiff's exclusive and extensive use and advertising, marketing and promotion of the CATFISH Trademark, and by reason of Plaintiff's aforesaid acts, the CATFISH Trademark has acquired extensive goodwill and the public has come to recognize and associate the Entertainment Services consisting of CATFISH branded programming and related advertising, marketing and promotional services exclusively with Plaintiff.  The CATFISH Trademark, whether alone or in combination with other words, when used in connection with such Entertainment Services, has come to identify and distinguish Plaintiff as the source or origin of

such Entertainment Services exclusively.

14.    As a result of Plaintiff's continuous, extensive and well-publicized use of the CATFISH Trademark, Plaintiff's CATFISH Trademark has achieved a degree of fame for entertainment services consisting of multi-platform programming content in the United States and is associated exclusively with Plaintiff and Plaintiff's high quality Entertainment Services to which Plaintiff's CATFISH Trademark has been applied.

B.    Plaintiff's CATFISH Branded Entertainment Services

15.    Plaintiff is the sole and exclusive owner in any and all rights in and to the universe of CATFISH branded Entertainment Services, including, without limitation, the television series *Catfish*, one of the most influential reality television series of the modern era.

16.    Plaintiff's CATFISH branded Entertainment Services consisting of the television series *Catfish* is based on Plaintiff's 2010 documentary film *Catfish*, in which the protagonist discovered that his online love interest was not who she claimed to be.  The success of the film *Catfish* ultimately led to the development of the hit television series *Catfish* that premiered on MTV in November 2012.

17.    In total, Plaintiff's CATFISH branded Entertainment Services consisting of the television series *Catfish* has spanned more than nine television seasons, totaling 246 separate episodes.  Since its 2012 debut, the critically acclaimed television series *Catfish* has become a cornerstone of American documentary reality television.  For example, Plaintiff's television series *Catfish* has garnered high ratings for episodes across all of its nine seasons.  The average ratings per episode for each season is 6.7 out of 10 based on an average of 40 votes.[1]

---

[1] *See Catfish: The TV Show ratings (TV show, 2012-)*, RATIN GRAPH, March 24, 2026, https://www.ratingraph.com/tv-shows/catfish-the-tv-show-ratings-46186/?, annexed hereto as Exhibit C to the Complaint.

18.    Through Plaintiff's efforts and actions to develop and promote the CATFISH branded Entertainment Services, the Entertainment Services consisting of the television series *Catfish* became a popular and highly successful show.  By way of example, and without limitation, the first season of *Catfish* averaged 2.3 million viewers in the key demographic of "Persons 12-34."[2]  The season two debut drew 2.5 million total viewers during its premier, making it the number one cable telecast of the day and the number two telecast of the day across all of television.[3]

19.    The popularity of Plaintiff's CATFISH branded Entertainment Series consisting of the television series *Catfish* was also evidenced by widespread mentions of Plaintiff's program on social media.  By way of illustration and without limitation, the season two debut generated approximately 800,000 mentions on Twitter and had 15 trending topics during the premiere episode.[4]  Likewise, according to Nielsen data, episode three of season two generated 583,260 Tweets on July 9, 2013, the day it premiered.[5]

20.    Later seasons continued to attract a wide following.  According to US TVDB, the average audience for Plaintiff's CATFISH branded Entertainment Services consisting of the television series *Catfish* was 443,000 viewers in May 2022, 472,000 viewers in November 2023 and 432,000 viewers in July 2024.[6]

21.    In September 2025, after nine seasons, due to problems at MTV, the network ceased production of new episodes of Plaintiff's CATFISH branded Entertainment Services consisting of

---

[2] *See*, *e.g.*, Mikey O'Connell, *TV Ratings: 'Catfish' Sees Steady Return, Minus Manti Te'o Buzz*, THE HOLLYWOOD REPORTER, June 26, 2013, https://www.hollywoodreporter.com/tv/tv-news/tv-ratings-catfish-sees-steady-575863/, annexed hereto as Exhibit D to the Complaint.

[3] *See*, *e.g.*, Tyler Peterson, *CATFISH Season 2 Premieres to 2.5 Million Viewers on MTV*, BROADWAY WORLD, June 26, 2013, https://www.broadwayworld.com/bwwtv/article/CATFISH-Season-2-Premieres-to-25-Million-Viewers-on-MTV-20130626, annexed hereto as Exhibit E to the Complaint.

[4] *Id.*

[5] *See Top 10 Social TV Programs, Week of July 8, 2013*, NIELSEN, July 2013, https://www.nielsen.com/insights/2013/top-10-social-tv-programs-the-week-of-july-8-2013/, annexed hereto as Exhibit F to the Complaint.

[6] *See Catfish: The TV Show*, US TVDB, February 24, 2026, https://ustvdb.com/networks/mtv/shows/catfish-show/, annexed hereto as Exhibit G to the Complaint.

the television series *Catfish*. However, reruns of the series continue to air and Plaintiff is preparing to relaunch the series on another network. As of January 2026, reruns of the television series *Catfish* are watched daily by a total of 102,100 people[7] and are available for streaming on Hulu, YouTube TV and Fubo.[8]

22.    The social media accounts associated with Plaintiff's CATFISH branded Entertainment Services consisting of the television series *Catfish* continue to have strong followings. The official Facebook account for Plaintiff's CATFISH branded Entertainment Services consisting of the television series *Catfish* currently has 4.5 million followers[9], the YouTube account currently has over 1 million subscribers with over 480 million views[10], the Instagram account currently has over 629,000 followers[11] and the X (formerly Twitter) account currently has over 415,000 followers.[12]

23.    Over the years, Plaintiff has expanded its use of the CATFISH Trademark, branching out into various enterprises that have bolstered its CATFISH branded entertainment universe, including, among other activities, advertising and sponsorships, streaming rights and merchandise. For example, in 2019, a CATFISH branded YouTube channel was launched, which expanded Plaintiff's Entertainment Services offered under the CATFISH brand.

24.    Plaintiff's CATFISH brand has proven so successful that it has spawned numerous spin-offs including the United States television series *Catfish: Trolls*, the United States podcast

---

[7] *Id.*

[8] *See Catfish: The TV Show*, TV GUIDE, March 24, 2026, https://www.tvguide.com/tvshows/catfish-the-tv-show/1030343394/, annexed hereto as Exhibit H to the Complaint.

[9] *See* Catfish: The TV Show (@mtvcatfish), Facebook (March 24, 2026, 2:48 PM EST), annexed hereto as Exhibit I to the Complaint.

[10] *See* MTV Catfish (@Catfish), YouTube (March 24, 2026, 2:52 PM EST), annexed hereto as Exhibit J to the Complaint.

[11] *See* MTV Catfish (@mtvcatfish), Instagram (March 24, 2026, 2:54 PM EST), annexed hereto as Exhibit K to the Complaint.

[12] *See* Catfish (@CatfishMTV), X (March 24, 2026, 3:07 PM EST), annexed hereto as Exhibit L to the Complaint.

series *Catfish: The Podcast* and the international television series *Catfish UK*, *Catfish Brazil* and *Catfish Mexico*, which are available for streaming in the United States.

25.    Due to Plaintiff's efforts to develop and promote the CATFISH brand, including, without limitation, the authorized spin-offs made available under the CATFISH Trademark, the CATFISH Trademark has gained widespread recognition and has become famous.

26.    The general public associates CATFISH with Plaintiff due to Plaintiff's longstanding efforts at advertising and promoting the CATFISH Trademark not only through television advertisements, but also online, in print and through other media to identify Plaintiff's Entertainment Services and educate consumers both in the United States and around the world that the source or origin of the CATFISH Trademark is Plaintiff.  As a result, the CATFISH Trademark is an extremely valuable asset to Plaintiff.

27.    Plaintiff has not, and has no intention to, abandon its valuable rights in and to the CATFISH Trademark.  To the contrary, Plaintiff has expanded the CATFISH brand to other countries and programs and continues to use and prominently display the CATFISH Trademark, including, without limitation, through the ongoing pursuit of expansions of the CATFISH brand for other entertainment services, including, without limitation, the creation and production of further programming content.

C.    Defendants' Infringing Acts

28.    Shortly after the public announcement that MTV would cease production of Plaintiff's television series *Catfish,* Defendants, without securing any of the necessary rights from Plaintiff required to develop a spin-off, in a calculated and misleading effort to trade on Plaintiff's CATFISH brand and the goodwill associated with Plaintiff's CATFISH Trademark, coordinated the development of competing entertainment services associated and in connection with the

creation, production, distribution, promotion, marketing, advertising and provision of ongoing, reality-based, investigative documentary storytelling in the nature of a television series under the name and trademark *Catfish Murders*.

29.     Plaintiff's counsel sent letters in December 2025 and January 2026 to Versant reminding Versant of Plaintiff's prior and superior rights in and to the CATFISH Trademark and warning Defendants not to infringe upon Plaintiff's intellectual property rights.

30.     Despite actual and constructive notice of Plaintiff's prior and federally registered rights in and to the CATFISH Trademark, Versant wrote to Plaintiff's counsel on January 23, 2026 refusing to change the name and trademark identifying its competing entertainment services consisting of a television program and the related advertising and promotional materials therefor. Versant indicated that Defendants intended to proceed with their unauthorized use of the CATFISH Trademark.

31.     Upon information and belief, Versant is continuing its efforts to develop entertainment services under the CATFISH Trademark and the release of such CATFISH branded programming is imminent.

## COUNT ONE

### (FEDERAL TRADEMARK INFRINGEMENT)

32.     Plaintiff repeats and realleges the allegations of Paragraphs 1–31 as though fully set forth herein.

33.     Upon information and belief, Pantheon is a content production company that produces unscripted multimedia content.

34.     Upon information and belief, Versant houses several cable and digital networks that air and distribute programming content.

35.    Upon information and belief, Versant has a contractual relationship with Pantheon with respect to the provision of entertainment services consisting of the creation, production, distribution, promotion, marketing and advertising of the television series *Catfish Murders*.

36.    Upon information and belief, Pantheon has produced and/or is producing and Versant has begun promoting, marketing and advertising for airing and distribution in interstate commerce Defendants' competing entertainment services consisting of ongoing, reality-based, investigative documentary storytelling in the nature of a television series under the name and trademark *Catfish Murders*.

37.    Upon information and belief, Defendants' entertainment services provided under the name and trademark *Catfish Murders* will be and/or are distributed, promoted, marketed and advertised in and through the same or similar channels of trade to the same or similar class of consumers interested in or familiar with Plaintiff's Entertainment Services bearing the CATFISH Trademark.

38.    Upon information and belief, Defendants' entertainment services will be and/or are identical to, or closely related to Plaintiff's Entertainment Services that have been and/or will be advertised, promoted and provided under the CATFISH Trademark for over a decade.

39.    Defendants' use of the name and trademark *Catfish Murders* to identify its competing entertainment services consisting of a television series so resembles Plaintiff's CATFISH Trademark in appearance, sound and commercial impression, including, without limitation, that Defendants have adopted and are using Plaintiff's primary, source-identifying CATFISH Trademark in its entirety as part of the name and trademark *Catfish Murders*. Defendants' use in the entirety of Plaintiff's CATFISH Trademark is without Plaintiff's consent, license or authorization.

10

40.     Upon information and belief, Defendants had actual and constructive knowledge of the existence of Plaintiff's CATFISH Trademark prior to commencing creation and production of their *Catfish Murders* entertainment services.

41.     Upon information and belief, the use by Defendants of the name and trademark *Catfish Murders* on or in connection with entertainment services consisting of an ongoing television series not produced by, or connected with or sponsored or approved by Plaintiff, is likely to deceive or cause confusion or mistake.

42.     Upon information and belief, Defendants' use of the name and trademark *Catfish Murders* creates a likelihood that a false and unfair association will be made between Defendants' entertainment services and the Entertainment Services of Plaintiff in that the trade and public are likely to believe that Defendants' entertainment services are connected with or produced, sponsored or approved by Plaintiff.

43.     The acts of the Defendants herein complained of constitute an infringement of Plaintiff's registered CATFISH Trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

44.     Upon information and belief, Defendants are now committing the acts above alleged and threaten to continue and expand same, including, without limitation, through the telecasting or streaming of the identical and/or closely related television series under the name and trademark *Catfish Murders*.

45.     By reason of Defendants' acts herein alleged, Plaintiff has suffered serious damage, and unless Defendants are restrained from continuing their wrongful acts, the damage to Plaintiff, which is irreparable, will increase.

46.     Defendants have acted in bad faith by electing to use Plaintiff's CATFISH

11

Trademark despite actual and constructive notice of Plaintiff's prior and federally registered rights in and to the CATFISH Trademark.

47. Upon information and belief, by their acts herein complained of, Defendants have and/or will make substantial profits to which they are not in equity entitled.

48. Plaintiff has no adequate remedy at law.

COUNT TWO

(FEDERAL UNFAIR COMPETITION)

49. Plaintiff repeats and realleges the allegations of Paragraphs 1–48 as though fully set forth herein.

50. Upon information and belief, Defendants have and/or will copy and incorporate Plaintiff's CATFISH Trademark and indicia in Defendants' *Catfish Murders* entertainment services by using the term CATFISH in connection with the creation, production, distribution, promotion, marketing, advertising and provision of an on-going television series, which creates the false and misleading impression that *Catfish Murders* is related to, a spin-off of, produced by, affiliated with or in some way sponsored by Plaintiff.

51. Upon information and belief, Defendants, by their acts complained of above, have used in connection with their entertainment services, words, symbols and representations tending falsely to describe or represent their entertainment services and the origin thereof.

52. Upon information and belief, Defendants, by their acts herein complained of, have falsely represented and falsely designated the origin or sponsorship of their entertainment services and have caused and/or will cause such entertainment services to enter into interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53. Upon information and belief, Defendants are now committing the acts above

alleged and threaten to continue to expand the same, including, without limitation, through the telecasting or streaming of the identical and/or closely related entertainment services consisting of a television series under the name and trademark *Catfish Murders*.

54. By reason of Defendants' acts herein alleged, Plaintiff has suffered serious damage and unless Defendants are restrained from continuing their wrongful acts, the damage to Plaintiff, which is irreparable, will continue and be increased.

55. Defendants have acted in bad faith by electing to use Plaintiff's CATFISH Trademark despite actual and constructive notice of Plaintiff's prior and federally registered rights in and to the CATFISH Trademark.

56. Upon information and belief, by their acts herein complained of, Defendants have and/or will make substantial profits to which they are not in equity entitled.

57. Plaintiff has no adequate remedy at law.

<u>COUNT THREE</u>

(NEW YORK COMMON LAW TRADEMARK INFRINGEMENT)

58. Plaintiff repeats and realleges the allegations of Paragraphs 1–57 as though fully set forth herein.

59. Upon information and belief, Defendants' acts complained of herein are likely to create a false and unfair association between the entertainment services of Defendants and Plaintiff and Plaintiff's Entertainment Services in that the trade and the public are likely to believe mistakenly that Defendants' entertainment services are produced by, connected with or approved or sponsored by Plaintiff.

60. Upon information and belief, Defendants' acts complained of herein will be and/or are being committed with the intent and purpose of appropriating and trading upon Plaintiff's

13

valuable goodwill and reputation, and with the intent of passing off Defendants' services as and for the Entertainment Services of Plaintiff.

61.     Upon information and belief, Defendants, by their acts alleged herein, have infringed Plaintiff's common law trademark rights in Plaintiff's CATFISH Trademark alone or in combination with the term "Murders," and have competed unfairly with Plaintiff and have otherwise used the reputation and goodwill of Plaintiff to distribute, promote, market and advertise and provide their competing entertainment services which are not sponsored or approved by or connected with Plaintiff.

62.     Upon information and belief, Defendants are now committing the acts above alleged and threaten to continue and expand same.

63.     By reason of Defendants' acts herein alleged, Plaintiff has suffered serious damage, and unless Defendants are restrained from continuing their wrongful acts, the damage to Plaintiff, which is irreparable, will continue and be increased.

64.     Upon information and belief, by their acts herein complained of, Defendants have and/or will make substantial profits to which they are not in equity entitled.

65.     Plaintiff has no adequate remedy at law.

COUNT FOUR

(NEW YORK COMMON LAW UNFAIR COMPETITION)

66.     Plaintiff repeats and realleges the allegations of Paragraphs 1–65 as though fully set forth herein.

67.     Upon information and belief, Defendants, by their acts herein complained of, constitute unfair competition in violation of the common laws of the state of New York.

68.     By reason of Defendants' acts herein alleged, Plaintiff has suffered serious damage

14

and unless Defendants are restrained from continuing their wrongful acts, the damage to Plaintiff, which is irreparable, will continue and be increased.

69.     Upon information and belief, by their acts herein complained of, Defendants have and/or will make substantial profits to which they are not in equity entitled.

70.     Plaintiff has no adequate remedy at law.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment:

1.     That Defendants, their officers, agents, servants, employees, attorneys, representatives, affiliates, related companies, distributors and dealers and all persons acting for, with, by through or under them, and each of them, be enjoined and restrained, at first during the pendency of this action and thereafter perpetually, from directly or indirectly:

a)     using in any manner Plaintiff's CATFISH Trademark, alone or in combination with any other word or words, design or designs, which so resemble Plaintiff's CATFISH Trademark as to be likely to cause confusion, deception or mistake, on or in connection with the creation, production, distribution, promotion, marketing, advertising and provision of any entertainment services not Plaintiff's or not authorized to be created, produced, distributed, promoted, advertised, marketed or provided in connection with Plaintiff's CATFISH Trademark;

b)     passing off, inducing or enabling others to sell or pass off, any entertainment services as and for entertainment services provided by Plaintiff, not Plaintiff's or not provided under the control and supervision of Plaintiff and approved by Plaintiff

15

for provision under the CATFISH Trademark, alone or in combination with any other word or words, design or designs;

c) committing any acts calculated to cause consumers to believe that Defendants' entertainment services are those created, produced, distributed, promoted, advertised, marketed or provided under the control or supervision of Plaintiff, or sponsored or approved or connected with or provided under the control and supervision of Plaintiff;

d) further infringing Plaintiff's CATFISH Trademark and damaging Plaintiff's goodwill;

e)  otherwise competing unfairly with Plaintiff in any manner; and

f) advertising, promoting or distributing or otherwise disposing of in any manner, services not provided by or for Plaintiff not authorized by Plaintiff to be rendered which bear the CATFISH Trademark or CATFISH, alone or in combination with any other word or words, design or designs, which resemble Plaintiff's CATFISH Trademark.

2.     That Defendants account for and pay over to Plaintiff all damages sustained by Plaintiff and profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's CATFISH Trademark be increased by a sum not exceeding three times the amount thereof as provided by law.

3.     That Plaintiff has such other and further relief as the Court may deem equitable, including, but not limited to, any relief set forth under Section 34 through 39 of the Lanham Act, 15 U.S.C. §§ 1116-1121, together with costs, disbursements and attorneys' fees in this action.

Dated:  March 26, 2026                              POWLEY & GIBSON, P.C.

16

By:    /s/ Rylan S. Brook
       Robert L. Powley
       New York State Bar No. 2467553
       rlpowley@powleygibson.com
       Thomas H. Curtin
       New York State Bar No. 2122364
       thcurtin@powleygibson.com
       Rylan S. Brook
       New York State Bar No. 5846480
       rsbrook@powleygibson.com

       60 Hudson Street, Suite 2203
       New York, NY 10013
       Telephone: (212) 226-5054
       Facsimile: (212) 226-5085

       *Attorneys for Plaintiff*
       *CATFISH PICTURE COMPANY, LLC*

17